UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KUWAIT INVESTMENT AUTHORITY,<br><br>                            Plaintiff,<br><br>     v.<br><br>AMERICAN INTERNATIONAL GROUP, INC., MARTIN J. SULLIVAN, STEVEN J. BENSINGER, JOSEPH CASSANO, ANDREW FORSTER, ALAN FROST, DAVID HERZOG, and ROBERT LEWIS,<br><br>                            Defendants. | No. 11-CV-8403 (LTS) (DCF) |
| OPPENHEIMER EQUITY FUND, INC.; OPPENHEIMER VARIABLE ACCOUNT FUNDS; PANORAMA SERIES FUNDS, INC.; OPPENHEIMER MAIN STREET FUND, INC.; OPPENHEIMER MAIN STREET SELECT FUND f/k/a Oppenheimer Main Street Opportunity Fund; OPPENHEIMER RISING DIVIDENDS FUND f/k/a Oppenheimer Quest Value Fund, Inc.; OPPENHEIMER GLOBAL ALLOCATION FUND f/k/a Oppenheimer Quest Balanced Fund; OPPENHEIMER CAPITAL APPRECIATION FUND; OPPENHEIMER GLOBAL FUND; OPPENHEIMER GLOBAL VALUE FUND; OPPENHEIMER EQUITY INCOME FUND, INC. f/k/a Oppenheimer Quest Capital Value Fund, Inc.; and OFITC GLOBAL FUND,<br><br>                            Plaintiffs,<br><br>     v.<br><br>AMERICAN INTERNATIONAL GROUP, INC., MARTIN J. SULLIVAN, STEVEN J. BENSINGER, JOSEPH CASSANO, ANDREW FORSTER, ALAN FROST, DAVID L. HERZOG, ROBERT LEWIS, STEPHEN F. BOLLENBACH, MARSHALL A. | No. 12-CV-0523 (LTS) (DCF) |

| | |
|---|---|
| COHEN, MARTIN S. FELDSTEIN, ELLEN V. FUTTER, STEPHEN L. HAMMERMAN, RICHARD C. HOLBROOKE, FRED H. LANGHAMMER, GEORGE L. MILES, JR., MORRIS W. OFFIT, JAMES F. ORR III, VIRGINIA M. ROMETTY, MICHAEL H. SUTTON, EDMUND S.W. TSE, ROBERT B. WILLUMSTAD, and FRANK G. ZARB,<br><br>                              Defendants. | |
| BRITISH COAL STAFF SUPERANNUATION SCHEME; MINEWORKERS' PENSION SCHEME; FÖRSTA AP-FONDEN; TAYSIDE SUPERANNUATION FUNDS; INTERNATIONAL FUND MANAGEMENT S.A.; DEKA INTERNATIONAL S.A. LUXEMBURG; DEKA INVESTMENT GmbH; and ETFLAB INVESTMENT GmbH,<br><br>                              Plaintiffs,<br><br>      v.<br><br>AMERICAN INTERNATIONAL GROUP, INC.; MARTIN J. SULLIVAN; STEVEN J. BENSINGER; JOSEPH CASSANO; ANDREW FORSTER; ALAN FROST; DAVID HERZOG; ROBERT LEWIS; STEPHEN F. BOLLENBACH; MARSHALL A. COHEN; MARTIN S. FELDSTEIN; ELLEN V. FUTTER; STEPHEN L. HAMMERMAN; GEORGE L. MILES, JR.; MORRIS W. OFFIT; JAMES F. ORR III; VIRGINIA ROMETTY; MICHAEL H. SUTTON; EDMUND S.W. TSE; FRANK G. ZARB; PRICEWATERHOUSECOOPERS LLC; CITIGROUP GLOBAL MARKETS INC.; CREDIT SUISSE SECURITIES (USA) LLC; DEUTSCHE BANK SECURITIES INC.; DOWLING & PARTNERS SECURITIES, LLC; FOX-PITT·KELTON COCHRAN CARONIA WALLER (USA) LLC; JP MORGAN SECURITIES INC.; KEEFE, BRUYETTE & WOODS, INC.; MERRILL | No. 12-CV-4555 (LTS) (DCF) |

| | |
|---|---|
| LYNCH, PIERCE, FENNER & SMITH INCORPORATED; and WACHOVIA CAPITAL MARKETS LLC,<br><br>                    Defendants. | |
| PACIFIC LIFE FUNDS and PACIFIC SELECT FUND,<br><br>                    Plaintiffs,<br><br>          v.<br><br>AMERICAN INTERNATIONAL GROUP, INC., MARTIN J. SULLIVAN, STEVEN J. BENSINGER, JOSEPH CASSANO, ANDREW FORSTER, ALAN FROST, DAVID L. HERZOG, ROBERT LEWIS, THOMAS ATHAN, STEPHEN F. BOLLENBACH, MARSHALL A. COHEN, MARTIN S. FELDSTEIN, ELLEN V. FUTTER, STEPHEN L. HAMMERMAN, RICHARD C. HOLBROOKE, FRED H. LANGHAMMER, GEORGE L. MILES, JR., MORRIS W. OFFIT, JAMES F. ORR III, VIRGINIA M. ROMETTY, MICHAEL H. SUTTON, EDMUND S.W. TSE, ROBERT B. WILLUMSTAD, and FRANK G. ZARB,<br><br>                    Defendants. | No. 12-CV-6071 (LTS) (DCF) |

| | |
|---|---|
| TEACHERS RETIREMENT SYSTEM OF THE STATE OF ILLINOIS,<br><br>                      Plaintiff,<br><br>    v.<br><br>AMERICAN INTERNATIONAL GROUP, INC., MARTIN J. SULLIVAN, STEVEN J. BENSINGER, ROBERT E. LEWIS, JOSEPH J. CASSANO, ANDREW FORSTER, ALAN FROST, and DAVID L. HERZOG,<br><br>                      Defendants. | No. 13-CV-3377 (LTS) (DCF) |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>                      Plaintiffs,<br><br>    v.<br><br>AMERICAN INTERNATIONAL GROUP, INC., MARTIN J. SULLIVAN, STEVEN J. BENSINGER, JOSEPH CASSANO, ANDREW FORSTER, ALAN FROST, DAVID L. HERZOG, ROBERT LEWIS,<br><br>                      Defendants. | No. 14-CV-1270 (LTS) (DCF) |

**PLAINTIFFS' OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ANDREW FORSTER'S MOTION TO DISMISS**

March 6, 2015

Plaintiffs in these related actions respectfully submit this memorandum of law in opposition to Defendant Andrew Forster's motion to dismiss, which was filed separately in each of the above-listed actions.[1]  Defendant Forster's five-page memorandum does not advance any new legal arguments.  Rather, it simply incorporates the arguments put forward in the motions to dismiss filed by the other Defendants and purports to explain how those arguments apply specifically to Forster.  Forster's motion should be denied for the same reasons as the other motions.[2]

First, as explained in opposition to Defendants' Omnibus Motion to Dismiss, filed by Defendant American International Group, Inc. ("AIG"), Plaintiffs' claims are timely because Defendants miscalculate the five-year period in 28 U.S.C. § 1658(b)(2) and, independently, because tolling under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), applies. (Omnibus Opp. Br. Parts I-II.)  Second, as explained in opposition to Defendant Joseph Cassano's Motion to Dismiss, any reliance on *Janus Capital Group, Inc. v. First Derivate Traders*, 131 S. Ct. 2296 (2011), by a corporate insider to escape the statements of the company under the group pleading doctrine is misplaced.  (Cassano Opp. Br. Part II.)  Because the group

---

[1] Plaintiffs have filed their own actions and opted out of the proposed settlement in *In re American Int'l Group, Inc. 2008 Securities Litigation*, No. 08-CV-4772 (S.D.N.Y.).  The original complaint in *Kuwait Investment Authority v. American International Group, Inc.* ("*Kuwait*"), No. 11-CV-8403 (LTS) (DCF), was filed on November 18, 2011.  The amended, operative complaint in *Kuwait* was filed on September 10, 2012 ("*Kuwait* Compl.").  The original complaint in *Oppenheimer Equity Fund, Inc. v. American International Group, Inc.* ("*Oppenheimer*"), No. 12-CV-523 (LTS) (DCF), was filed on January 20, 2012.  The amended, operative complaint in *Oppenheimer* was filed on June 26, 2012 ("*Oppenheimer* Compl.").  The original complaint in *British Coal Staff Superannuation Scheme v. American International Group, Inc.* ("*British Coal*"), No. 12-CV-4555 (LTS) (DCF), was filed on June 11, 2012.  The corrected, operative complaint in *British Coal* was filed on July 9, 2012 ("*British Coal* Compl.").  The complaint in *Pacific Life Funds v. American International Group, Inc.* ("*Pacific Life*"), No. 12-CV-6071 (LTS) (DCF), was filed on August 8, 2012.  The amended, operative complaint in *Pacific Life* was filed on January 20, 2015 ("*Pacific Life* Compl.").  The complaint in *Teachers Retirement System of the State of Illinois v. American International Group, Inc.* ("*TRSI*"), No. 13-CV-3377 (LTS) (DCF), was filed on May 17, 2013 ("*TRSI* Compl.").  The complaint in *Regents of the University of California v. American International Group, Inc.* ("*U.C. Regents*"), No. 14-CV-1270 (LTS) (DCF), was filed on August 6, 2013 ("*U.C. Regents* Compl.").

[2] Plaintiffs expressly incorporate all points of law and argument advanced in opposition to those other motions.  *See* Plaintiffs' Omnibus Opposition to Defendants' Joint Omnibus Motion to Dismiss on Timeliness Grounds, dated March 6, 2015 ("Omnibus Opp. Br."); Pls. Mem. of Law in Opp. to Defendant Cassano's Motion to Dismiss, dated March 6, 2015 ("Cassano Opp. Br.").

pleading doctrine survives *Janus*, the Court should apply the group pleading doctrine to Forster just as it did in *In re American International Group, Inc. 2008 Securities Litigation*, 741 F. Supp. 2d 511, 529-30 (S.D.N.Y. 2010) [hereinafter *AIG*].

## STATEMENT OF FACTS

Andrew Forster was the Executive Vice President of Assets Trading & Credit Products ("Assets/Credit") at American International Group Financial Products Corp. ("AIGFP") during the relevant period.[3] *See generally AIG*, 741 F. Supp. 2d at 520-528 (discussing Forster's involvement). Forster and the other named Defendants "exercised control over AIG and/or AIGFP during the relevant time period [March 16, 2006 through September 18, 2008] through the key roles they played in the Company's management and their direct involvement in its day to day operations, including its financial reporting and accounting functions, and therefore caused the Company to engage in the illegal conduct and practices complained of herein."[4]

As set forth in opposition to the Cassano motion, AIGFP is a division of Defendant AIG responsible for credit default swap ("CDS") contracts. These contracts insured securities backed by mortgages, auto loans and credit card receivable that in part caused the downfall of AIG.[5] The CDS business of AIGFP was run out of the Assets/Credit group that Forster supervised.[6]

---

[3] *Kuwait* Compl. ¶ 45; *Oppenheimer* Compl. ¶ 49; *British Coal* Compl. ¶ 37; *Pacific Life* Compl. ¶ 40; *TRSI* Compl. ¶ 57; *U.C. Regents* Compl. ¶ 40.

[4] *Kuwait* Compl. ¶ 517; *Oppenheimer* Compl. ¶ 536; *Pacific Life* Compl. ¶ 528; *TRSI* Compl. ¶ 366; *U.C. Regents* Compl. ¶ 529; *see also British Coal* Compl. ¶ 380.

[5] *See* Cassano Opp. Br. at Facts Part B; *Kuwait* Compl. ¶¶ 5-11, 15-20, 54; *Oppenheimer* Compl. ¶¶ 4-9, 12; *British Coal* Compl. ¶¶ 3-9, 13-17, 60; *Pacific Life* Compl. ¶¶ 4-9, 12; *TRSI* Compl. ¶¶ 3-11, 13-15; *U.C. Regents* Compl. ¶¶ 6-12, 15-20; 61.

[6] *Kuwait* Compl. ¶¶ 98, 451; *Oppenheimer* Compl. ¶¶ 49, 123; *British Coal* Compl. ¶¶ 97, 328; *Pacific Life* Compl. ¶¶ 40, 115; *TRSI* Compl ¶ 57; *U.C. Regents* Compl. ¶¶ 98, 439.

Defendant Forster—along with Cassano in London and three others in Wilton, Connecticut—controlled the flow of information regarding the CDS portfolio.[7] The tight control by this inner circle over the CDS portfolio allowed it to change the way AIGFP valued the portfolio and conceal the negative impact of the deteriorating market conditions on that value.[8] Indeed, financial reporting decisions concerning the CDS portfolio were made by Forster and Cassano with the help of a few others, while the valuation process relating to the CDS portfolio was deliberately conducted outside AIG's risk management and other financial functions.[9] In short, Forster's group was the only source for information at AIG regarding this portfolio, and the information they gave turned out to be woefully inaccurate.[10]

On May 31, 2007, AIG made a special presentation to the investment community that covered AIGFP's CDS portfolio and put Forster forward to discuss the CDS business.[11] Forster told the investment community that AIGFP conducted this business assuming "the worst recession [he] can imagine and . . . mak[ing] sure that [he could]withstand all of that."[12] He claimed that it was "fairly easy for us to hedge any of the risk that we perceive" and that if the

---

[7] *Kuwait* Compl. ¶ 452; *Oppenheimer* Compl. ¶ 473; *British Coal* Compl. ¶ 97; *Pacific Life* Compl. ¶ 465; *TRSI* Compl. ¶¶ 56-60; *U.C. Regents* Compl. ¶ 439; *see also Kuwait* Compl. ¶ 12 *Oppenheimer* Compl. ¶ 7; *British Coal* Compl. ¶ 103; *Pacific Life* Compl. ¶ 7; *U.C. Regents* Compl. ¶ 9 (explaining that Cassano and a handful of others kept a tight rein on the origination, valuation and reporting functions related to the CDS portfolio within AIGFP).

[8] *Kuwait* Compl. ¶¶ 25, 431; *Oppenheimer* Compl. ¶ 18; *British Coal* Compl. ¶ 103; *Pacific Life* Compl. ¶ 18; *TRSI* Compl. ¶¶ 60, 232-33; *U.C. Regents* Compl. ¶¶ 19, 460.

[9] *Kuwait* Compl. ¶¶ 224(a), 235(a); *Oppenheimer* Compl. ¶ 7; *British Coal* Compl. ¶¶ 150(a), 163; *Pacific Life* Compl. ¶ 7; *TRSI* Compl. ¶¶ 12, 228, 287-91; *U.C. Regents* Compl. ¶¶ 232(a), 243(a).

[10] *Kuwait* Compl. ¶ 97; *Oppenheimer* Compl. ¶ 171; *British Coal* Compl. ¶ 116; *Pacific Life* Compl. ¶ 163; *TRSI* Compl. ¶ 186; *U.C. Regents* Compl. ¶ 97.

[11] *Kuwait* Compl. ¶ 259; *Oppenheimer* Compl. ¶ 285; *British Coal* Compl. ¶ 190; *Pacific Life* Compl. ¶ 277; *TRSI* Compl. ¶ 131; *U.C. Regents* Compl. ¶ 267.

[12] *Id.*

portfolio did deteriorate, "it would be very easy for us to go out, buy an extra layer of protection."[13] He further claimed that there was "conservatism" built into these portfolios.[14]

Contrary to his representations, Forster knew and failed to disclose the deliberate decision not to hedge the portfolio because of how it would have affected short-term profitability.[15] Hedging was an option to AIGFP; however, it would have affected revenue, which would have impacted management bonuses.[16] Without hedging, AIG was exposed to losing the full notional amount of the multi-sector CDOs it was insuring—approximately $80 billion, of which at least $63 billion was backed by subprime mortgage debt.[17] The decision not to hedge the portfolio was not due to "conservatism," as Defendant Forster stated, but because of management's greed and desire to increase its own compensation.[18]

When questions arose regarding the CDS portfolio, AIG again put Forster forward to defend its strength. At a December 5, 2007 investor meeting, Forster highlighted AIG's purported rigorous due diligence and fundamental analysis in structuring the transactions—even beyond the risks captured by the models—to emphasize the strength of the products.[19] Forster's

---

[13] *Id*.

[14] *Id*.

[15] *Kuwait* Compl. ¶ 260; *Oppenheimer* Compl. ¶ 286; *British Coal* Compl. ¶ 329; *Pacific Life* Compl. ¶ 278; *TRSI* Compl. ¶ 132; *U.C. Regents* Compl. ¶ 268.

[16] *Kuwait* Compl. ¶¶ 91-92; *Oppenheimer* Compl. ¶ 117; *British Coal* Compl. ¶ 85; *Pacific Life* Compl. ¶ 109; *TRSI* Compl. ¶¶ 334-37; *U.C. Regents* Compl. ¶¶ 91-92.

[17] *Kuwait* Compl. ¶ 90; *Oppenheimer* Compl. ¶ 115; *British Coal* Compl. ¶ 81; *Pacific Life* Compl. ¶ 107; *TRSI* Compl. ¶ 115; *U.C. Regents* Compl. ¶ 90.

[18] *Kuwait* Compl. ¶ 92; *Oppenheimer* Compl. ¶ 117; *British Coal* Compl. ¶ 86; *Pacific Life* Compl. ¶ 109; *TRSI* Compl. ¶¶ 332-40; *U.C. Regents* Compl. ¶ 92.

[19] *Kuwait* Compl. ¶ 303; *Oppenheimer* Compl. ¶ 474; *British Coal* Compl. ¶¶ 115, 234; *Pacific Life* Compl. ¶ 466; *U.C. Regents* Compl. ¶ 312; *see also Kuwait* Compl. ¶ 304; *Oppenheimer* Compl. ¶ 331; *British Coal* Compl. ¶ 235; *Pacific Life* Compl. ¶ 323; *U.C. Regents* Compl. ¶ 313 ("We think if you combine the model with fundamental analysis and credit analysis deciding whether we think these are good assets before they're going in, that we capture an awful lot more risks that are in there. And that's why we think we have a better transaction.").

<228>portfolio did deteriorate, "it would be very easy for us to go out, buy an extra layer of protection."[13] He further claimed that there was "conservatism" built into these portfolios.[14]

Contrary to his representations, Forster knew and failed to disclose the deliberate decision not to hedge the portfolio because of how it would have affected short-term profitability.[15] Hedging was an option to AIGFP; however, it would have affected revenue, which would have impacted management bonuses.[16] Without hedging, AIG was exposed to losing the full notional amount of the multi-sector CDOs it was insuring—approximately $80 billion, of which at least $63 billion was backed by subprime mortgage debt.[17] The decision not to hedge the portfolio was not due to "conservatism," as Defendant Forster stated, but because of management's greed and desire to increase its own compensation.[18]

When questions arose regarding the CDS portfolio, AIG again put Forster forward to defend its strength. At a December 5, 2007 investor meeting, Forster highlighted AIG's purported rigorous due diligence and fundamental analysis in structuring the transactions—even beyond the risks captured by the models—to emphasize the strength of the products.[19] Forster's

---

[13] *Id*.

[14] *Id*.

[15] *Kuwait* Compl. ¶ 260; *Oppenheimer* Compl. ¶ 286; *British Coal* Compl. ¶ 329; *Pacific Life* Compl. ¶ 278; *TRSI* Compl. ¶ 132; *U.C. Regents* Compl. ¶ 268.

[16] *Kuwait* Compl. ¶¶ 91-92; *Oppenheimer* Compl. ¶ 117; *British Coal* Compl. ¶ 85; *Pacific Life* Compl. ¶ 109; *TRSI* Compl. ¶¶ 334-37; *U.C. Regents* Compl. ¶¶ 91-92.

[17] *Kuwait* Compl. ¶ 90; *Oppenheimer* Compl. ¶ 115; *British Coal* Compl. ¶ 81; *Pacific Life* Compl. ¶ 107; *TRSI* Compl. ¶ 115; *U.C. Regents* Compl. ¶ 90.

[18] *Kuwait* Compl. ¶ 92; *Oppenheimer* Compl. ¶ 117; *British Coal* Compl. ¶ 86; *Pacific Life* Compl. ¶ 109; *TRSI* Compl. ¶¶ 332-40; *U.C. Regents* Compl. ¶ 92.

[19] *Kuwait* Compl. ¶ 303; *Oppenheimer* Compl. ¶ 474; *British Coal* Compl. ¶¶ 115, 234; *Pacific Life* Compl. ¶ 466; *U.C. Regents* Compl. ¶ 312; *see also Kuwait* Compl. ¶ 304; *Oppenheimer* Compl. ¶ 331; *British Coal* Compl. ¶ 235; *Pacific Life* Compl. ¶ 323; *U.C. Regents* Compl. ¶ 313 ("We think if you combine the model with fundamental analysis and credit analysis deciding whether we think these are good assets before they're going in, that we capture an awful lot more risks that are in there. And that's why we think we have a better transaction.").

statements were contrary to his own knowledge.[20]  And, as time proved, these assurances were wrong; AIG was brought down in large part based on AIGFP's CDS portfolio.[21]

## ARGUMENT

**I.    PLAINTIFFS' EXCHANGE ACT CLAIMS ARE NOT BARRED BY 28 U.S.C. § 1658(b)(2).**

Defendant Forster makes no new arguments regarding the five-year period set forth in 28 U.S.C. § 1658(b)(2), and Plaintiffs' claims are timely for the reasons set forth in the opposition to the omnibus brief filed by AIG.  (*See* Omnibus Opp. Br. Parts I-II.)  Independently, because Plaintiffs had pending claims as putative class members since May 2008, tolling under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), applies to their claims against Forster.  (*See* Omnibus Opp. Br. Part II.)  Finally, if one were to (incorrectly) accept the "repose dates" offered by Forster in the chart in his memorandum (Forster Br. 4), all of the Plaintiffs at issue in this motion have repose dates that pre-date the last omission and most have repose dates that cover at least one of Forster's own specific oral statements.

**II.   DEFENDANT FORSTER IS LIABLE FOR BOTH THE STATEMENTS HE MADE ORALLY AND THE STATEMENTS THE COMPANY MADE.**

As with Defendant Cassano, Forster does not dispute that he can be held liable for his own statements to AIG investors.  In particular, he does not dispute that his May 31, 2007 or December 5, 2007 statements could be the basis of his liability.  (Forster Br. 5.)  Rather, he

---

[20] *Kuwait* Compl. ¶ 452; *Oppenheimer* Compl. ¶ 453; *British Coal* Compl. ¶ 329; *Pacific Life* Compl. ¶ 445; *TRSI* Compl. ¶¶ 60, 157; *U.C. Regents* Compl. ¶¶ 440, 460 (Forster knew that counterparties were not required to provide underlying loan detail, which was critical to evaluating the risk association with CDS transactions).

[21] *Kuwait* Compl. ¶ 19; *Oppenheimer* Compl. ¶¶ 16, 20-23; *British Coal* Compl. ¶ 19; *Pacific Life* Compl. ¶¶ 16, 20-23; *TRSI* Compl. ¶¶ 2, 96; *U.C. Regents* Compl. ¶¶ 24-25.

claims that he cannot be held liable for the company's written statements, which were entirely consistent with how Forster portrayed the CDS portfolio orally to investors.[22]

As set out more fully in opposition to the Cassano motion, *City of Pontiac General Employees' Retirement System v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 374 (S.D.N.Y. 2012), correctly holds that *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011), is limited to *third parties* (not corporate executives) and, under the group pleading doctrine, an executive leading the division at the heart of the alleged fraud could be held liable as a "maker" of a statement even where that executive did not sign the filing at issue.  (*See* Cassano Opp. Br. Part II.B.)

Forster tries to paint himself as a "mid-level manager," unable to "make" a statement for liability purposes.  (Forster Br. 5.)  But this position is belied by the allegations contained in the complaints and this Court's earlier holdings.

As described above, Forster was an Executive Vice President for the Asset/Credit group with responsibility for the CDS contracts.  He maintained tight control over the reporting relating to these contracts, and was selected by AIG to speak to the investment community about them.[23]  Plaintiffs' allegations thus support an inference that Forster was responsible for any information about the CDS portfolio that was disseminated throughout AIG or to the public.  Indeed, this explains why Forster's oral statements are consistent with the Company's written statements.  The group pleading doctrine allows discovery to proceed and determine the true extent of Forster's involvement in how the Company reported on the CDS portfolio, beyond his own oral

---

[22] As with Defendant Cassano, for purposes of these actions, Plaintiffs do not seek to hold Defendant Forster accountable for the oral statements of other individuals.

[23] *Kuwait* Compl. ¶¶ 45, 224(a), 253(a), 259, 303-04, 452; *Oppenheimer* Compl. ¶¶ 49, 115, 250(a), 285; *British Coal* Compl. ¶¶ 37, 86, 97, 150(a), 163, 190-91, 235; *Pacific Life* Compl. ¶¶ 40, 107, 242(a), 277; *TRSI* Compl. ¶¶ 57, 131-32; *U.C. Regents* Compl. ¶¶ 9, 19, 98, 232(a), 243(a), 267, 312-13, 439, 460.

6

statements.  To read *Janus* more broadly would unnecessarily provide bad actors like Forster with immunity for their contributions to a company's fraudulent misrepresentations.

      This is not the first time Forster has tried to avoid liability by claiming that he was too junior to matter.  In the AIG class case, he was one of two individual defendants who sought to avoid control person liability under Section 20(a).  *AIG*, 741 F. Supp. 2d at 535.  This Court disagreed and upheld lead plaintiff's Section 20(a) claim, based his management of "the operations of the CDS portfolio" and the fact that he "held himself out to investors as an authority on the CDS portfolio during the Company's conference calls."  *Id*.  Forster was not a mid-level employee; it is appropriate to apply the group pleading doctrine to him as this Court did in the class case.  *Id*. at 529-30.

## CONCLUSION

For the reasons set forth above, Defendant Forster's motion to dismiss Plaintiffs' claims should be denied.

Dated: March 6, 2015
   New York, New York

              Respectfully Submitted,

              **BOIES, SCHILLER & FLEXNER LLP**

              By: /s/_____
                  Jonathan D. Schiller

              BOIES, SCHILLER & FLEXNER LLP
              575 Lexington Avenue, 7th Floor
              New York, New York 10022
              Tel: (212) 446-2300
              Fax: (212) 446-2350
              jschiller@bsfllp.com

              *Attorneys for Plaintiff Kuwait Investment Authority*

**-additional signature page to follow-**

**SUSMAN GODFREY LLP**

By:   /s/_____
          Mark H. Hatch-Miller

560 Lexington Avenue, 15th Floor
New York, New York 10022
Tel:  (212) 336-8330
Fax:  (212) 336-8340
mhatch-miller@susmangodfrey.com

-and-

Stephen D. Susman
560 Lexington Avenue, 15th Floor
New York, New York 10022
Tel:  (212) 336-8330
Fax:  (212) 336-8340
ssusman@susmangodfrey.com

-and-

Harry P. Susman
1000 Louisisana Street, Suite 5100
Houston, Texas 77002-5096
Tel:  (713) 651-9366
Fax:  (713) 654-6666
hsusman@susmangodfrey.com

-and-

David D. Shank
901 Main Street, Suite 5100
Dallas, Texas 75202
Tel:  (214) 754-1935
Fax:  (214) 754-1933
dshank@susmangodfrey.com

*Attorneys for Oppenheimer Plaintiffs and Pacific Funds and Pacific Select Fund Plaintiffs*

**-additional signature page to follow-**

9

**GRANT & EISENHOFER, P.A.**

By: /s/_____
    Geoffrey C. Jarvis
    Jay W. Eisenhofer

485 Lexington Avenue
New York, New York 10017
Tel: (212) 722-8500
Fax: (212)336-8340
gjarvis@gelaw.com
jeisenhofer@gelaw.com

-and-

John C. Kairis
123 Justison Street
Wilmington, DE 19801
Tel: (302) 622-7160
Fax: (302) 622-7100
jkairis@gelaw.com

*Attorneys for British Coal Plaintiffs*

**-additional signature page to follow-**

Case 1:14-cv-01270-LTS-DCF   Document 57   Filed 03/06/15   Page 15 of 16

**ROBBINS GELLER RUDMAN & DOWD LLP**

By:  /s/_____
         Theodore J. Pintar

Darren J. Robbins
Thomas E. Egler
Susannah R. Conn
655 West Broadway, Suite 1900
San Diego, CA 92101
Tel: (619) 231-1058
Fax: (619) 231-7423
tedp@rgrdlaw.com
darrenr@rgrdlaw.com
tome@rgrdlaw.com
sconn@rgrdlaw.com

-and-

Samuel H. Rudman
58 South Service Road, Suite 200
Melville, New York 11747
Tel: (631) 367-7100
Fax: (631) 367-1173
srudman@rgrdlaw.com

*Attorneys for Plaintiff Teachers Retirement System of the State of Illinois*

**-additional signature page to follow-**

11

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**

By:   /s/_____
        Michael J. Miarmi

Steven E. Fineman
Daniel P. Chiplock
Nicholas Diamand
Douglas I. Cuthbertson
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel:  (212) 355-9500
Fax:  (212) 355-9592
sfineman@lchb.com
dchiplock@lchb.com
mmiarmi@lchb.com
ndiamand@lchb.com
dcuthbertson@lchb.com

*-and-*

Richard M. Heimann
Joy A. Kruse
Bruce W. Leppla
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
rheimann@lchb.com
jakruse@lchb.com
bleppla@lchb.com

*Attorneys for Plaintiff The Regents of the University of California*