**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

THE REGENTS OF THE UNIVERSITY OF
CALIFORNIA,

        Plaintiff,

      v.

AMERICAN INTERNATIONAL GROUP, INC.,
MARTIN J. SULLIVAN, STEVEN J. BENSINGER,
JOSEPH CASSANO, ANDREW FORSTER, ALAN
FROST, DAVID L. HERZOG, ROBERT LEWIS,

        Defendants.

No. 14 Civ. 1270 (LTS) (DCF)

---

## OPPOSITION OF PLAINTIFF THE REGENTS OF THE UNIVERSITY OF CALIFORNIA TO DEFENDANTS' JOINT MOTION TO DISMISS STATE-LAW CLAIMS

**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013-1413
(212) 355-9500

*Attorneys for Plaintiff The Regents of the
University of California*

1217979.4

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

PROCEDURAL BACKGROUND AND SUMMARY OF PLAINTIFF'S ALLEGATIONS ...... 2

    A.   History of Plaintiff's Case .................................................................................. 2

    B.   Plaintiff's Allegations ......................................................................................... 3

ARGUMENT ....................................................................................................................... 4

   I.   SLUSA Does Not Bar Plaintiff's State-Law Claims. ............................................. 4

    A.   *Regents* Is Not a "Covered Class Action" Because It Is Not Proceeding as
       a "Single Action" with the Class Action. .................................................... 5

    B.   Mere Coordination of Cases Does Not Render *Regents* a
       "Covered Class Action." ............................................................................. 6

    C.   Decisions Based on Consolidated, Joined, or MDL Proceedings Are Inapposite. ..... 9

    D.   Barring Plaintiff's State-Law Claims Would Be Inconsistent with
       SLUSA's Purpose. .................................................................................... 11

  II.   Plaintiff's Claims Are Sufficiently Alleged ........................................................ 13

    A.   Plaintiff Pleads Reliance for Its Fraud Claim ............................................ 13

    B.   Plaintiff States a Claim for Unjust Enrichment ......................................... 16

CONCLUSION .................................................................................................................. 18

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amorosa v. Ernst & Young LLP*,
   682 F. Supp. 2d 351 (S.D.N.Y. 2010)................................................................................ 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................................................. 4

*Bonner v. Redwood Mortg. Co.*,
   Nov. C 10-00479 WHA, 2010 WL 1267069 (N.D. Cal. Mar. 29, 2010) ............................. 18

*Boschma v. Home Loan Ctr., Inc.*,
   198 Cal. App. 4th 230 (Cal. Ct. App. 2011) ....................................................................... 13

*Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*,
   368 F.3d 86 (2d Cir. 2004)................................................................................................. 11

*Chapman v. Skype Inc.*,
   220 Cal. App. 4th 217 (Cal. Ct. App. 2013) ...................................................................... 14

*Cnty. of Suffolk v. First Am. Real Estate Solutions*,
   261 F.3d 179 (2d Cir. 2001)................................................................................................. 4

*Consorti v. Armstrong World Indus.*,
   72 Cal. 4th 1003 (2d Cir. 1995),
   *vacated on other grounds*, 518 U.S. 1031 (1996) .............................................................. 9

*Engalla v. Permanente Med. Grp., Inc.*,
   15 Cal. 4th 951 (Cal. 1997).................................................................................. 2, 13, 14, 16

*Gelboim v. Bank of Am. Corp.*,
   135 S. Ct. 897 (2015).................................................................................................... 10, 11

*Gordon Partners v. Blumenthal*,
   No. 02 Civ. 07377, 2007 WL 1438753 (S.D.N.Y. May 16, 2007),
   *aff'd*, 293 F. App'x 815 (2d Cir. 2008)................................................................................ 9

*Homedics, Inc. v. Valley Forge Ins. Co.*,
   315 F.3d 1135 (9th Cir. 2003) ........................................................................................... 13

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
   No. 03 MD 01529, 2009 WL 2407835 (S.D.N.Y. Aug. 5, 2009).......................................... 6

*In re AOL Time Warner, Inc. Sec. Litig.*,
   503 F. Supp. 2d 666 (S.D.N.Y. 2007)................................................................................. 9

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
   No. 12 Civ. 5210 (PKC), 2013 WL 6504801 (S.D.N.Y. Dec. 11, 2013) ............................. 10

# TABLE OF AUTHORITIES
## (continued)

Page

*In re Citigroup Inc. Sec. Litig.*,
  987 F. Supp. 2d 377 (S.D.N.Y. 2013) ................................................................ 6, 10

*In re Fannie Mae 2008 Sec. Litig.*,
  891 F. Supp. 2d 458 (S.D.N.Y. 2012) ................................................................ 7, 10

*In re GlenFed, Inc. Sec. Litig.*,
  60 F.3d 591 (9th Cir. 1995) ............................................................................ 15, 16

*In re Lord Abbett Mut. Funds Fee Litig.*,
  553 F.3d 248 (3d Cir. 2009) ................................................................................. 12

*In re Pfizer Inc. Sec. Litig.*,
  584 F. Supp. 2d 621 (S.D.N.Y. 2008) ................................................................... 16

*In re Refco Inc. Sec. Litig.*,
  859 F. Supp. 2d 644 (S.D.N.Y.2012) ...................................................................... 6

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (Cal. 2009) .................................................................................. 14

*In re WorldCom, Inc. Sec. Litig.*,
  308 F. Supp. 2d 236 (S.D.N.Y. 2004) ..................................................................... 9

*Kainos Labs., Inc. v. Beacon Diagnostics, Inc.*,
  No. C-97-4618 MHP, 1998 U.S. Dist. LEXIS 23473 (N.D. Cal. Sept. 14, 1998) .................. 15

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .............................................................................. 14

*Lazar v. Superior Court*,
  12 Cal. 4th 631 (Cal. 1996) .................................................................................. 13

*Lectrodryer v. Seoulbank*,
  77 Cal. App. 4th 723 (Cal. Ct. App. 2000) ............................................................. 16

*Liberty Media Corp. v. Vivendi Universal, S.A.*,
  842 F. Supp. 2d 587 (S.D.N.Y. 2012) ................................................................. 8, 9

*Liberty Synergistics Inc. v. Microflo Ltd.*,
  718 F.3d 138 (2d Cir. 2013) ................................................................................. 13

*McNeary-Calloway v. JP Morgan Chase Bank, N.A.*,
  863 F. Supp. 2d 928 (N.D. Cal. 2012) .................................................................... 17

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
  547 U.S. 71 (2006) ......................................................................................... 5, 11

*Meyer v. JinkoSolar Holdings Co.*,
  761 F.3d 245 (2d Cir. 2014) ................................................................................... 4

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Mirkin v. Wasserman*,
   5 Cal. 4th 1082 (Cal. 1993) ..................................................................................... 13

*Monaco v. Bear Stearns Cos.*,
   No. CV 09-05438 SJO (JCx), 2011 WL 11027559 (C.D. Cal. Jan. 13, 2011) ........................ 16

*Morales v. Unilever United States, Inc.*,
   Civ. No. 2:13-2213 WBS EFB, 2014 U.S. Dist. LEXIS 49336 (E.D. Cal. Apr. 9, 2014) ....... 14

*Ohlendorf v. Am. Brokers Conduit*,
   No. CIV. S-11-293 LKK/EFB, 2012 WL 718682 (E.D. Cal. Mar. 5, 2012) ........................... 18

*Prime Mover Capital Partners v. Elixir Gaming Techs., Inc.*,
   898 F. Supp. 2d 673 (S.D.N.Y. 2012) ....................................................................... 18

*Tosti v. Los Angeles*,
   754 F.2d 1485 (9th Cir. 1985) ................................................................................. 13

*Valtierra v. Wells Fargo Bank*,
   No. CIV-F-10-084 AWI GSA, 2011 WL 2078024 (E.D. Cal. May 25, 2011) ....................... 16

*Ventura v. AT&T Corp.*,
   No. 05 Civ. 05718, 2006 WL 2627979 (S.D.N.Y. Sept. 13, 2006) ..................................... 6, 7

*Waldrup v. Countrywide Fin. Corp.*,
   No. 2:13-cv-08833-CAS(CWx), 2014 U.S. Dist. LEXIS 52216 (C.D. Cal. Apr. 14, 2014) .... 16

**Statutes**

15 U.S.C. § 78bb(f)(1) ............................................................................................. 5

15 U.S.C. § 77p(f)(2)(a) ........................................................................................... 5

15 U.S.C. 78bb(f)(5)(B)(ii) ....................................................................................... 5

**Rules**

Fed. R. Civ. P. 15(a) ............................................................................................... 18

**Other Authorities**

5 Witkin Cal. Proc. Plead. § 730 .............................................................................. 15

H.R. Conf. Rep. No. 105-803 (1998) ........................................................................ 11

H.R. Rep. No. 105-640 (1998) ................................................................................. 12

S. Rep. 104-98 (1995) ............................................................................................ 12

S. Rep. No. 105-182 (1998) .................................................................................... 12

Plaintiff The Regents of the University of California ("Plaintiff" or "Regents") respectfully submits this memorandum of law in opposition to Defendants' joint motion to dismiss Plaintiff's state-law claims.[1]

## PRELIMINARY STATEMENT

Plaintiff brings suit against American International Group, Inc. ("AIG" or the "Company") and several Individual Defendants arising out of misconduct from March 16, 2006 to September 16, 2008 ("Relevant Period") relating to AIG's exposure to the subprime-mortgage market. The Complaint alleges violations of the Securities Exchange Act of 1934 ("Exchange Act"), as well as claims for fraud and unjust enrichment under California common law.[2] This brief addresses Defendants' joint motion to dismiss Plaintiff's state-law claims. The motion should be denied, for the following reasons:

*First*, the Securities Litigation Uniform Standards Act ("SLUSA") does not bar Plaintiff's state-law claims. Plaintiff's individual action against Defendants does not constitute a "covered class action" under SLUSA, because it is not consolidated or joined with the class action in *In re American International Group, Inc. 2008 Securities Litigation* (the "Class Action") and is not proceeding as part of multidistrict litigation. That this case is "related" to the Class Action is insufficient to transform these cases into a "single action" for purposes of SLUSA. Nor does Plaintiff's agreement to be bound by certain case-management orders automatically convert this case into a "covered class action." Indeed, reading SLUSA to preclude individual actions where plaintiffs agree to coordinate their cases to promote efficiency would create perverse incentives

---

[1] For purposes of this brief, "Defendants" refers to AIG and "Individual Defendants" Martin J. Sullivan, Steven J. Bensinger, Joseph Cassano, Andrew Forster, Alan Frost, David Herzog, and Robert Lewis.

[2] Plaintiff (along with plaintiffs in several other related actions) is submitting a separate omnibus brief addressing Defendants' omnibus motion to dismiss (Dkt. No. 44), and separate omnibus briefs addressing Defendant Joseph Cassano's motion to dismiss (Dkt. No. 48), and Defendant Andrew Forster's motion to dismiss (Dkt. No. 51). The docket numbers herein refer to docket entries in *The Regents of the University of California v. American International Group, Inc., et al.*, Case No. 1:14-cv-1270-LTS-DCF (S.D.N.Y.) ("*Regents*").

for plaintiffs to avoid coordination in order to preserve their state-law claims.  SLUSA is focused

on class actions—this is not one, and Plaintiff's claims are therefore not precluded.

*Second*, with respect to common-law fraud, Plaintiff has sufficiently alleged reliance—

the only ground on which Defendants challenge this claim.  Plaintiff alleges that it relied, both

directly and indirectly, on misstatements and omissions by Defendants during the Relevant

Period.  Because the Complaint contains allegations detailing the materiality of those

misrepresentations, Plaintiff is entitled to a presumption of reliance under California law.  *See*

*Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951 (Cal. 1997).  Plaintiff has thus pled

reliance.

*Third*, Plaintiff states a claim for unjust enrichment.  Plaintiff alleges that the

compensation and bonuses the Individual Defendants received were tied to the amount of income

derived from sales of risky CDS contracts and premiums paid to AIG on those contracts,

regardless of how the contracts actually performed.  Plaintiff and others were forced to shoulder

the burden of the risky CDS contracts that Defendants used to increase their pay; when AIG's

obligations under those contracts came due, the value of Plaintiff's shares dropped significantly,

while Defendants unjustly kept the benefit of their inflated compensation.  AIG was also unjustly

enriched through its May 2008 public offering, which raised over $20 billion in new capital for

the Company while negatively impacting shareholders by lowering earnings per share.

Defendants' motion should therefore be denied in its entirety.

## PROCEDURAL BACKGROUND AND SUMMARY OF PLAINTIFF'S ALLEGATIONS

### A.       History of Plaintiff's Case

Plaintiff filed this action in the Northern District of California on August 6, 2013.  The

case was assigned to Judge Jeffrey S. White.  On December 23, 2013, Defendants moved to

transfer the case to the Southern District of New York.[3]  On February 18, 2014, the parties

stipulated to transfer,[4] which Judge White approved on February 24, 2014.[5]

Following transfer, the case was assigned to Judge Kimba M. Wood.  On February 27,

2014, Defendants' counsel sent Judge Wood a letter on behalf of the parties, requesting that the

case be reassigned to this Court for purposes of judicial efficiency because it is related to the

Class Action and several other individual cases brought against AIG.[6]  The case was

subsequently reassigned to this Court, but remains separate from the other individual actions.[7]

### B.      Plaintiff's Allegations[8]

Plaintiff alleges that during the Relevant Period, Defendants made false and misleading

statements concerning AIG's exposure to subprime mortgages, in particular the risk the

Company bore with respect to its collateral obligations in connection with credit default swaps

("CDSs").  Beginning in 2004, AIG engaged in a practice of writing CDSs on collateralized debt

obligations ("CDOs") backed by securities that included mortgage loans.[9]  AIG also had a

securities-lending program, through which it would lend securities to banks and brokers in

exchange for cash collateral that AIG would then invest.[10]  Throughout the Relevant Period, AIG

downplayed the risk of loss based on increasing levels of defaults on the mortgage loans

connected to its CDS and securities-lending program, and overstated its ability to cover the

collateral calls caused by failing mortgages.[11]

---

[3] Dkt. No. 15.
[4] Dkt. No. 24.
[5] Dkt. No. 25.
[6] Dkt. No. 28.
[7] Dkt. No. 29.
[8] A more detailed summary of the allegations appears in Plaintiffs' Omnibus Opposition to Defendants' Joint Omnibus Motion to Dismiss on Timeliness Grounds.
[9] ¶¶ 8,69-72.  Citations to "¶ __" are to the Complaint.
[10] ¶¶ 10, 12, 175.
[11] ¶¶ 115-19, 179.

In September 2008, AIG disclosed that it had insufficient capital and reserves to honor its collateral obligations, and required approximately $80 billion in private or public financing to avoid failing.[12]  Recognizing AIG's collapse was imminent, the U.S. government agreed to an $85 billion bailout of the Company, in exchange for a 79.9% equity stake in it.[13]  Upon disclosure of the true state of AIG's finances—culminating in the revelation of the bailout, after trading closed on September 16, 2008—AIG shareholders and bondholders, including Plaintiff, collectively lost tens of billions of dollars.[14]

## ARGUMENT

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must accept all factual allegations in the complaint as true and draw all inferences in the plaintiff's favor.  *Meyer v. JinkoSolar Holdings Co.*, 761 F.3d 245, 249 (2d Cir. 2014).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Cnty. of Suffolk v. First Am. Real Estate Solutions*, 261 F.3d 179, 187 (2d Cir. 2001).[15]  To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## I.   SLUSA Does Not Bar Plaintiff's State-Law Claims.

Defendants first argue that SLUSA bars Plaintiff's state-law claims.  SLUSA provides that "[n]o covered class action based upon the statutory or common law of any State . . . may be maintained in any State or Federal court by any private party alleging . . . a misrepresentation or

---

[12] ¶¶ 25, 189.

[13] ¶¶ 26, 184, 497.

[14] ¶¶ 28, 495, 498.

[15] Unless stated otherwise, all internal citations, quotation marks, and footnotes have been omitted, and all emphasis added.

omission of a material fact in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1). The Supreme Court has explained that "SLUSA does not actually pre-empt any state cause of action." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 87 (2006). The statute "simply denies plaintiffs the right to use *the class-action device* to vindicate certain claims"; it "does not deny any individual plaintiff . . . the right to enforce any state-law cause of action that may exist." *Id.* Defendants' attempt to contort this individual, non-class case into a "covered class action" is unavailing.

**A.**   *Regents* **Is Not a "Covered Class Action" Because It Is Not Proceeding as a "Single Action" with the Class Action.**

SLUSA defines the term "covered class action" as any "group of lawsuits filed in or pending in the same court and involving common questions of law of fact, in which (I) damages are sought on behalf of more than 50 persons; and (II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose." 15 U.S.C. §§ 77p(f)(2)(a); 78bb(f)(5)(B)(ii).[16] Because this case is not "joined, consolidated, or otherwise proceed[ing] as a single action for any purpose" with the Class Action, Plaintiff's state-law claims are not precluded by SLUSA.

It is undisputed that *Regents* has not been formally "joined" or "consolidated" with the Class Action.[17] Absent formal consolidation or joinder, cases proceeding "on separate procedural track[s]," are not considered "a single action" for purposes of SLUSA. *Ventura v.*

---

[16] Plaintiff does not dispute that the securities in this case are covered by SLUSA and that Plaintiff's claims for common-law fraud and unjust enrichment assert state-law causes of action based on alleged misstatements and omissions of material fact in connection with its purchase of those securities.

[17] The consolidation order in the Class Action expressly limited the scope of consolidation to newly filed or transferred *class actions*, and did not extend to individual actions such as *Regents. See* Consolidation Order (Dkt. No. 81) at 10, *In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 08 Civ. 4772 (S.D.N.Y. Mar. 20, 2009) ("When a *class action* that relates to the same subject matter as the Consolidated Securities Action is hereafter filed in or transferred to this Court . . . it shall be consolidated with these actions."). It is undisputed, moreover, that Plaintiff has not stipulated to any form of consolidation with the Class Action, nor has *Regents* been consolidated with the Class Action pursuant to judicial order, statute, or order of the Judicial Panel on Multidistrict Litigation ("JPML").

1217979.4

*AT&T Corp.*, No. 05 Civ. 05718, 2006 WL 2627979, at *1 (S.D.N.Y. Sept. 13, 2006); *see also In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MD 01529, 2009 WL 2407835, at *2 (S.D.N.Y. Aug. 5, 2009) (there was no "logic or persuasive authority to the defendants' . . . argument that the action [at issue] is one of a 'group of lawsuits' that are 'joined, consolidated, or otherwise proceed as a single action for any purpose'").

Some courts have held that where an individual action is not formally consolidated or joined with a class action, a proceeding constitutes a "single action" under SLUSA where the individual case proceeds within an MDL.  *See, e.g.*, *In re Refco Inc. Sec. Litig.*, 859 F. Supp. 2d 644, 649 (S.D.N.Y.2012) (because an "MDL proceeding coordinates discovery and other pretrial proceedings . . . the actions in it are accordingly proceeding as a single action" under SLUSA).[18]

*Regents* does not meet the criteria for a "single action" under SLUSA:  it is not formally consolidated with or joined to the Class Action, and is not a part of an MDL.  At most, it is "related" to the Class Action, which no court has held is sufficient to bind separate cases as a "single action" under SLUSA.  *See* Section I.C., *infra*.

**B.  Mere Coordination of Cases Does Not Render *Regents* a "Covered Class Action."**

AIG argues (at 7-8) that the case-management orders ("CMOs") entered in this and other individual actions demonstrate that *Regents* has been proceeding "in tandem" with the Class Action.  AIG cites (at 8) two aspects of the CMOs:  (i) CMO No. 2 restricts AIG from moving to dismiss this case on grounds already considered, and rejected, by the Court in the Class Action; and (ii) in CMO No. 1, AIG voluntarily agreed to provide Regents and other opt-out plaintiffs

---

[18] *Accord In re Citigroup Inc. Sec. Litig.*, 987 F. Supp. 2d 377, 387 (S.D.N.Y. 2013) ("[E]ven if two actions have not been formally joined or consolidated, they are proceeding 'as a single action for any purpose' within the meaning of SLUSA when they are grouped together as part of an MDL.").

with discovery material already produced in the Class Action, and the parties agreed to be bound by existing discovery orders and protocols.

Coordination under these CMOs does not bind *Regents* with the Class Action as a "single action" for purposes of SLUSA preclusion.  Indeed, the CMOs demonstrate that the Class Action is actually far more procedurally advanced than this case, and therefore the two are not proceeding on the same "procedural track."  *See Ventura*, 2006 WL 2627979, at *1 (stipulation and order that "postponed defendants' time to respond to the [individual] complaint until thirty-days after an order on the motions to dismiss [was entered in the class action]" demonstrated that the "[individual] case [was] on a separate procedural track" and therefore SLUSA did not apply); *cf. In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 479 (S.D.N.Y. 2012) (individual and class cases considered single action for SLUSA purposes where they "proceed[] on the same motion schedule").  For example, CMO No. 1 makes clear that deadlines for discovery in the Class Action do not apply to the individual actions.  *See* CMO No. 1, § IV.S.  Additionally, CMO No. 2 allows Defendants in the individual actions to bring motions to dismiss on any grounds other than those previously addressed and rejected by the Court in the Class Action, in which the pleadings were adjudicated years ago.  *See* CMO No. 2, § II.A.

Further, the Class Action recently settled after what AIG itself describes as "multiple stages [of litigation] including motions to dismiss, motions for judgment on the pleadings, fact discovery (including the production of millions of pages of documents and over 40 depositions), and class certification discovery, motions and hearings," the majority of which occurred before Plaintiff even filed this action in August 2013.[19]  This case, by contrast, is in its infancy: Plaintiff was only recently served with discovery requests and began producing documents, and

---

[19] *See* Mem. of Law in Support of Defs.' Joint Omnibus Mot. to Dismiss (on timeliness grounds) (Dkt. No. 45) at 1-2.

the pleadings have yet to be resolved.  AIG's assertion that the Class Action and *Regents* are on the "same procedural track" ignores the procedural realities of the two cases.

AIG also cites the CMOs that Plaintiff entered into to promote efficiency in resolving the pleadings and conducting discovery in this action.[20]  CMO No. 1, which provides for coordination of certain discovery procedures to promote efficiency,[21] was entered by the Court before Plaintiff brought suit.  In fact, Plaintiff only recently stipulated to be bound by certain provisions of CMO No. 1, including those relating to discovery, which AIG now seizes on as support for its claim that the separate cases constitute a "single action."  If agreeing to coordination for discovery and pleading purposes is sufficient to convert an individual action into a "covered class action," plaintiffs seeking to preserve their state-law claims will lack incentive to do so, and efficiency will suffer.  Defendants should not be permitted to wield discovery coordination as a preclusive weapon.

For the same reasons, AIG's voluntary disclosure of discovery materials under CMO Nos. 1 and 2 does not demonstrate coordination for SLUSA purposes.  Indeed, one court in this District recently rejected a similar tactic by defendants.  *See Liberty Media Corp. v. Vivendi Universal, S.A.*, 842 F. Supp. 2d 587, 593 (S.D.N.Y. 2012).  In *Liberty Media*, defendant moved for consolidation with a related class action against Vivendi; after the court issued the consolidation order, defendant moved to dismiss the state-law claims based on the previously unavailable argument that the claims were precluded by SLUSA.  *Id*. at 589-90.  In denying the motion, the court noted "Vivendi never raised the impact of its SLUSA defense on [plaintiff]'s state-law claims prior to consolidation," and thus the court "did not have the opportunity to

---

[20] On January 15, 2015, Magistrate Judge Freeman entered the parties' stipulation and order that applied several provisions of CMO No. 1 to the parties in *Regents*.  Dkt. No. 41.

[21] *See* Dkt. No. 41 ("the parties in the UC Regents Action recognize that agreeing to be bound by the provisions of CMO No. 1 as expressed by, and consistent with, CMO No. 2 would promote efficiency and coordination of the Individual Actions").

consider the prejudice that would result to [plaintiff] upon consolidation"—namely, that "consolidation could result in the loss of [plaintiffs'] state-law claims in their entirety." *Id.* at 593.[22]  The court vacated the consolidation order because "the prejudice to [plaintiff] resulting from consolidation with the Class Action, and subsequent preemption under SLUSA, would be [in]consonant with justice." *Id.* at 593.  The same is true here:  AIG never addressed the potential effect that its own *voluntary* disclosure of discovery materials might have on Plaintiff's state-law claims, but now points to such disclosure as evidence of coordination that compels SLUSA preclusion.  This tactic should be rejected.

C.   **Decisions Based on Consolidated, Joined, or MDL Proceedings Are Inapposite.**

The decisions Defendants cite are inapposite, as they addresses situations, not present here, where formal consolidation or joinder has occurred, or where cases proceed as part of an MDL.  Defendants rely heavily, for example, on decisions where there were stipulations, statutes, or judicial orders formally consolidating the actions at issue.  *See, e.g.*, *Gordon Partners v. Blumenthal*, No. 02 Civ. 07377, 2007 WL 1438753, at *3 (S.D.N.Y. May 16, 2007) (covered class action existed where "plaintiffs stipulated to the consolidation of this action with the class action for pretrial purposes"), *aff'd* 293 F. App'x 815 (2d Cir. 2008).[23]  The other decisions Defendants cite involved individual actions transferred to an MDL for inclusion in already coordinated or consolidated pretrial proceedings.  *See, e.g.*, *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, No. 12 Civ. 5210 (PKC), 2013 WL 6504801, at *6 (S.D.N.Y. Dec.

---

[22] *See also Consorti v. Armstrong World Indus.*, 72 F.3d 1003, 1007 (2d Cir. 1995)  (consolidation should be considered only when "savings of expense and gains of efficiency can be accomplished without sacrifice of justice"), *vacated on other grounds*, 518 U.S. 1031 (1996).

[23] *See also In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 671-72 (S.D.N.Y. 2007) ("covered class action" existed where lawsuits were formally consolidated pursuant to judicial order); *In re WorldCom, Inc. Sec. Litig.*, 308 F. Supp. 2d 236, 246 (S.D.N.Y. 2004) (SLUSA applied where actions were formally "consolidated for pretrial purposes").

1217979.4

11, 2013) ("[C]oordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407 falls within 'any group of lawsuits' that 'proceed[s] as a single action for any purpose,' and therefore constitutes a 'covered class action' under SLUSA").[24]

None of those decisions address the situation where, as here, a proceeding was transferred to this District and "related" to the Class Action, but not consolidated with it or coordinated as part of an MDL. *See* Dkt. No. 28 (parties requesting that *Regents* be deemed "related" to the Class Action). Defendants have not, and cannot, identify a single case within this Circuit applying SLUSA preclusion in the absence of consolidation, joinder, or coordination within an MDL.

Indeed, the Supreme Court's recent decision in *Gelboim v. Bank of America Corp.*, 135 S. Ct. 897 (2015), undermines lower courts' reading of the phrase "joined, consolidated, or otherwise proceed[ing] as a single action for any purpose" as encompassing cases consolidated in an MDL. In *Gelboim*, the Court held that an order entirely disposing of one case in an MDL constitutes a "final decision" under 28 U.S.C. § 1291, regardless of whether other cases are still pending in the MDL. The Court explained that cases consolidated for MDL pretrial proceedings "ordinarily retain their separate identities, so an order disposing of one of the discrete cases in its entirety should qualify under §1291 as an appealable final decision." 135 S. Ct. at 899. The MDL-transfer statute (28 U.S.C. § 1407), the Court observed, "refers to individual 'actions'

---

[24] *Citigroup*, 987 F. Supp. 2d at 386, 388 (two actions transferred to one court "pursuant to an order of the JPML" assigning them "for inclusion in coordinated or consolidated pretrial proceedings" and thereafter "grouped together as part of an MDL" proceed "'as a single action for any purpose' within the meaning of SLUSA"); *Fannie Mae*, 891 F. Supp. 2d at 479  (court-ordered consolidation of cases within MDL triggered SLUSA); *Amorosa v. Ernst & Young LLP*, 682 F. Supp. 2d 351, 375-76 (S.D.N.Y. 2010) (individual action "proceeded as a single action" with class action and other opt-out actions where all cases were proceeding within an MDL and where the individual action was being prosecuted jointly with the numerous other opt-out cases on behalf of hundreds of investors represented by the same counsel).

which may be transferred to a single district court, not to any monolithic multidistrict 'action' created by transfer."  *Id.*

In light of *Gelboim*, it makes even *more* sense that an individual action's separate identity is preserved where, as here, it was never formally consolidated or coordinated with a class action.  To preclude Plaintiff's state-law claims under SLUSA would run contrary to the Supreme Court's instruction that even actions consolidated for MDL purposes maintain their separate identities.

In accordance with the foregoing principles and authorities, *Regents* is not a "covered class action."  SLUSA therefore does not preclude Plaintiff's state-law claims.

### D.  Barring Plaintiff's State-Law Claims Would Be Inconsistent with SLUSA's Purpose.

Precluding Plaintiff's state-law claims would also be inconsistent with SLUSA's purpose. Promulgated in 1998, SLUSA was intended to stem the shift in private securities class litigation from federal to state court that occurred in response to Congress's passage of the Private Securities Litigation Reform Act ("PSLRA"), which, among other things, imposes heightened pleading requirements for Exchange Act claims.  *See Dabit*, 547 U.S. at 86 ("SLUSA's stated purpose [is] 'to prevent certain State *private securities class action lawsuits* alleging fraud from being used to frustrate the objectives' of the [PSLRA].") (quoting SLUSA § 2(5), 112 Stat. 3227).  SLUSA was enacted "after it became evident that the PSLRA had not achieved its purpose" of "curtail[ing] 'strike suits'—*i.e.*, meritless *class actions* alleging fraud in the sale of securities."  *Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 98 (2d Cir. 2004) (quoting H.R. Conf. Rep. No. 105-803 (1998)).  Such "strike suits," Congress determined, "are brought with the hope that the expense of litigation may force defendants to settle despite the actions' lack of merit," and they therefore "'unnecessarily increase the cost of raising capital and

-11-

chill corporate disclosure.'" *In re Lord Abbett Mut. Funds Fee Litig.*, 553 F.3d 248, 250 (3d Cir. 2009) (quoting S. Rep. 104-98 (1995)).

Both the PSLRA and SLUSA focus on securities class actions; neither concerns individual actions for violation of state or federal law. *See* H.R. Rep. No. 105-640, at 10 (1998) (the "solution" to circumvention of the PSLRA "is to make Federal court the exclusive venue for *securities fraud class action* litigation"); *id.* at 8-9 (purpose of SLUSA was to "establish[] uniform national rules for *securities class action* litigation involving our national capital markets"). Explaining the term "covered class action," the Senate Report made clear that "[t]he Committee does not intend for the bill to prevent plaintiffs from bringing bona fide individual actions simply because more than fifty persons commence the actions in the same state court against a single defendant." S. Rep. No. 105-182 (1998). That is, absent consolidation, joinder, or other proceedings establishing a "single action," SLUSA is not intended to bar state-law claims. SLUSA's concern is with class actions, which, in Congress's view, pose the threat of *in terrorem* settlements. That concern does not relate to individual actions such as this.

SLUSA's objective "to prevent plaintiffs from seeking to evade the protections that Federal law provides against abusive litigation by filing suit in State, rather than in Federal, court" (H. R. Rep. No. 105-640, at 8-9) likewise does not address the situation here: Far from attempting to "evade the protections of federal law," Plaintiff has availed itself of the federal courts, and federal law, by opting out of the Class Action and filing its own direct action in federal court, and then agreeing (for the sake of efficiency), to transfer the action to this District and relate it to the Class Action. Plaintiff's addition of two common-law claims to be litigated with its Exchange Act claims does not transform this case into the type of action SLUSA is

intended to preclude, especially given that these state-law claims were not, and likely could not be, brought in the Class Action.[25]  Plaintiff should be permitted to pursue its California claims.

## II.     Plaintiff's Claims Are Sufficiently Alleged

### A.     Plaintiff Pleads Reliance for Its Fraud Claim.

Under California law,[26] the elements of fraud are (1) a misrepresentation or omission; (2) knowledge of falsity; (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) damages.  *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (Cal. 1996).  Defendants contend only that Plaintiff fails to plead reliance.  They are wrong.

While a fraud plaintiff must plead actual reliance on the alleged misrepresentations or omissions, reliance is properly pled where she alleges that "'had the omitted information been disclosed, the plaintiff would have been aware of it and behaved differently.'"  *Boschma v. Home Loan Ctr., Inc.*, 198 Cal. App. 4th 230, 250-251 (Cal. Ct. App. 2011) (quoting *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1108 (Cal. 1993)).  Plaintiff's reliance need not be the sole, predominant, or decisive factor; "[i]t is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision."  *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 977 (Cal. 1997) (quoting Rstmt. 2d of Torts § 546).  Moreover, "a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material."  *Id.*

---

[25] *See Tosti v. Los Angeles*, 754 F.2d 1485, 1489 (9th Cir. 1985) ("one of the primary reasons a [class] member will opt out of a class suit is that she has strong individual claims against the defendant that she believes will not be redressed by the overall class settlement").

[26] California law applies to Plaintiff's fraud and unjust-enrichment claims.  *See Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 153-154 (2d Cir. 2013) (district court in New York was required to apply state substantive law of California where plaintiff originally filed suit in California and the parties subsequently agreed to transfer to the Eastern District of New York under 28 U.S.C. § 1404).  Because the laws of California and New York do not differ materially with respect to the elements of fraud and unjust enrichment, the Court should apply California law.  *See Homedics, Inc. v. Valley Forge Ins.* Co., 315 F.3d 1135, 1138 (9th Cir. 2003) ("When neither party identifies a meaningful conflict between California law and the law of another state, California courts apply California law.").

In *Engalla*, the California Supreme Court considered whether plaintiff showed that defendant engaged in fraud in the inducement of an arbitration agreement.  *Id*. at 973-74.  The court held that plaintiff "need only make a showing that the misrepresentations were material, and that therefore a reasonable trier of fact could infer reliance from such misrepresentations" to survive a summary judgment-like proceeding on the fraud claim.  *Id*. at 977.

Further, the California Supreme Court, relying on decisions interpreting common-law claims, has applied a presumption of reliance at the pleading stage for claims under the "fraud" prong of California's unfair competition law ("UCL").  *See In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (Cal. 2009) (presumption of reliance for UCL claim where misstatements or omissions are material) (citing *Engalla*, 15 Cal. 4th at 976-77).[27]  Like common-law fraud claims, claims under the "fraud" prong of the UCL are subject to heightened pleading and require that the plaintiff allege "actual reliance."[28]

Plaintiff's allegations that Defendants' misstatements and omissions were material, combined with Plaintiff's allegations that it relied on those misstatements and omissions, suffice at the pleading stage.  The Complaint is replete with allegations concerning the materiality of the

---

[27] *See also Morales v. Unilever United States, Inc*., Civ. No. 2:13-2213 WBS EFB, 2014 U.S. Dist. LEXIS 49336, 11-12 n.4 (E.D. Cal. Apr. 9, 2014) (courts "routinely apply the presumption of reliance at the pleading stage" in UCL cases); *Chapman v. Skype Inc*., 220 Cal. App. 4th 217, 229 (Cal. Ct. App. 2013) ("To satisfy the requirement of pleading actual reliance, or causation, in connection with false advertising for purposes of the UCL and the false advertising law, a plaintiff need only allege a misrepresentation of a material fact.").  In *Chapman*, plaintiff brought a class action against defendant Skype, claiming it had engaged in deceptive advertising and had misled its customers by labeling calling plans "Unlimited" when they were in fact limited as to the number of minutes and calls.  220 Cal. App. 4th at 223.  The court held that plaintiff had adequately alleged actual reliance for purposes of a UCL claim by alleging a material misrepresentation.  *Id*. at 230.  As to plaintiff's fraud claim, the court granted leave to amend to plead actual reliance, on the grounds that, as defendant argued, plaintiff renewed her Skype subscription after learning that the calling plan was not unlimited, suggesting that she did not actually rely on the alleged misstatements and thereby rebutting any presumption of reliance.  *Id*. at 231-32.  Because the complaint made no allegations regarding renewal, and that fact was not judicially noticeable, the court granted leave to allow plaintiff to replead her actual reliance on the material misstatements.  *Id*. at 232.

[28] *See Kearns v. Ford Motor Co*., 567 F.3d 1120, 1125 (9th Cir. 2009) (Rule 9(b)'s heightened pleading standard applies to claims for violations of the UCL); *Tobacco II Cases*, 46 Cal. 4th at 326 ("we conclude that [the language of the UCL] imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong"); *Chapman*, 220 Cal. App. 4th at 228 (plaintiff must plead "actual reliance" for a UCL claim).

misstatements and omissions.[29]  It also specifically alleges that "[h]ad Plaintiff known of the material adverse information not disclosed by Defendants, or been aware of the truth behind Defendants' material misrepresentations and omissions, *[it] would not have purchased AIG securities at inflated prices*." ¶ 503.[30]  Allegations that Plaintiff directly relied on material misstatements or omissions suffice to plead "actual reliance."  *See Boschma*, 198 Cal. App. at 251 (where plaintiff adequately alleges actual reliance, "it would be improper to adjudicate the factual question of plaintiffs' actual reliance at the demurrer stage").[31]

Denying Plaintiff the *Engalla* presumption at this stage would improperly impose a greater burden on Plaintiff to *plead* actual reliance than to *prove* actual reliance for a fraud claim. The California Supreme Court's decision in *Mirkin* declining to incorporate a fraud-on-the-market presumption into the common law of deceit does not compel such a result.  Defendants' reliance on *Kainos Laboratories, Inc. v. Beacon Diagnostics, Inc.*, No. C-97-4618 MHP, 1998 U.S. Dist. LEXIS 23473 (N.D. Cal. Sept. 14, 1998), is unavailing, because the court there dismissed plaintiff's fraud claim as insufficiently pled with respect to several elements, including knowledge of falsity, intent to deceive, and reliance, without any specific discussion of what allegations, if any, plaintiff had made with respect to reliance.  *Id.* at *40-41.  Additionally, *In re GlenFed, Inc. Securities Litigation*, 60 F.3d 591 (9th Cir. 1995), is inapposite, because plaintiffs in that case had "abandoned their arguments concerning their state law claims" on appeal, and so

---

[29] *E.g.*, ¶¶ 119, 148-54, 159, 233, 243, 258-59, 266, 268, 286, 317, 324, 348, 367, 375, 388, 413, 484.

[30] *See also* ¶ 548 ("[I]n direct reliance on the material misstatements and omissions alleged herein, Plaintiff purchased AIG securities at artificially inflated prices during the Relevant Period.  *But for the fraud alleged herein, Plaintiff would not have purchased the securities at artificially inflated prices*."); ¶ 521 ("In ignorance of the materially false and misleading nature of Defendants' statements . . . or *in direct reliance on the material misstatements and omissions alleged herein*, Plaintiff purchased AIG securities at artificially inflated prices").

[31] *See also* 5 Witkin Cal. Proc. Plead. § 730 (to plead actual reliance, "[t]he plaintiff must plead that he or she believed the representations to be true (or was ignorant of their falsity—which amounts to the same thing), and that in reliance on this belief (or induced by it), he or she entered into the transaction, e.g., purchased property"; such allegations "appear to be both simple and formal; the same general type of averment could be made in an action for fraud, substituting in each new case the particular transaction involved").

the court of appeals did not address them.  *Id.* at 592.  And this Court's decision in *In re Pfizer Inc. Securities Litigation*, 584 F. Supp. 2d 621 (S.D.N.Y. 2008), concerned whether the fraud-on-the-market presumption applied to a common-law fraud claim under New York law.  *Id.* at 644-45.[32]  Plaintiff does not invoke the fraud-on-the-market presumption with respect to its claim for common-law fraud.

Under *Engalla*, Plaintiff is entitled to a presumption (or at least an inference) of reliance, given that, as Defendants concede, Plaintiff has sufficiently pled that the alleged misstatements and omissions were material.  *See Engalla*, 15 Cal. 4th at 977.  Coupled with the allegations that Plaintiff relied on those material misstatements and omissions, the Complaint pleads actual reliance.[33]

### B.  **Plaintiff States a Claim for Unjust Enrichment.**

To plead a claim for unjust enrichment, Plaintiff must allege that Defendants received a benefit and unjustly retained it at Plaintiff's expense.  *Lectrodryer v. Seoulbank*, 77 Cal. App. 4th 723, 726 (Cal. Ct. App. 2000).  Where a plaintiff's allegations do not "sound in fraud," it need only satisfy Rule 8's pleading standard.  *See Waldrup v. Countrywide Fin. Corp.*, No. 2:13-cv-08833-CAS(CWx), 2014 U.S. Dist. LEXIS 52216, at *21-22 (C.D. Cal. Apr. 14, 2014) (where plaintiff's unjust-enrichment claim does not require that she allege particular misstatements or omissions, claim does not sound in fraud and need not be pled with the particularity required by Rule 9(b)).  Plaintiff's allegations do, at any rate, also satisfy Rule 9(b).

---

[32] Moreover, neither *Monaco v. Bear Stearns Cos.*, No. CV 09-05438 SJO (JCx), 2011 WL 11027559 (C.D. Cal. Jan. 13, 2011), nor *Valtierra v. Wells Fargo Bank*, No. CIV-F-10-084 AWI GSA, 2011 WL 2078024 (E.D. Cal. May 25, 2011), both cited by Defendants, evaluated whether the plaintiff was entitled to a presumption of actual reliance where the alleged misstatements or omissions were material.

[33] Plaintiff respectfully requests that if the Court determines Plaintiff has inadequately pled actual reliance, Plaintiff be granted leave to amend.  *See* Fed. R. Civ. P. 15(a) ("The court should freely give leave [to amend] when justice so requires.").

1217979.4

The complaint details how Defendants benefitted at Plaintiff's expense. AIG's compensation arrangement gave certain Defendants a motive to perpetrate fraud, because "executives grew rich by taking on excessive risk." ¶ 462. In fact, Defendants' compensation and bonuses were tied to sales of CDS contracts and the premiums paid on those contracts, not the performance of those contracts. ¶ 467. As a result, Defendants had an incentive to issue risky CDSs in order to generate larger bonuses for themselves, leaving shareholders, including Plaintiff, holding the bag when AIG's obligations under those contracts came due. Indeed, even after AIG collapsed and shareholders suffered losses, Defendants "walk[ed] away with millions of dollars" in unjust compensation, despite their role in precipitating the Company's failure. ¶ 462. These allegations of unjust benefit are sufficient to state a claim for unjust enrichment. *See McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F. Supp. 2d 928, 963-964 (N.D. Cal. 2012) (plaintiffs stated a claim for unjust enrichment (termed "restitution") by alleging that defendants had unjustly charged plaintiffs and that defendants wrongfully earned commissions and kickbacks at plaintiffs' expense).

The Complaint is, moreover, specific as to *which* Defendants received the unjust benefits, as well as the *amount* of those benefits. For example, the Complaint alleges that Defendant Sullivan received total compensation of $13.9 million in 2007, the same year the Company reported that net income fell 55%. ¶ 465. Sullivan's Board-approved, $47 million severance package was made *after* AIG's record drop in shareholder value and investors' massive losses. ¶ 466. The Complaint also pleads specifics concerning unjust benefit conferred on Defendants Cassano, Frost, and Forster, at the same time shareholders were losing value.[34]

---

[34] *See, e.g.*, ¶¶ 467-69 (compensation and bonuses paid to AIGFP employees despite large losses in shareholder value); 470 (Defendant Cassano made $46.3 million in salary and bonuses in 2006 and $24.2 million in compensation in 2007, and received a $1 million per month consulting contract after his departure in February 2008, despite the $11.12 billion loss in value of the CDS portfolio he oversaw); 472 (AIG's compensation program

*Footnote continued on next page*

Further, AIG was itself unjustly enriched by its May 2008 sale of common stock and equity units through public offerings, which raised over $20 billion in new capital for the Company, but which had a severe impact on AIG's earnings per share, to the detriment of Plaintiff and other investors.  ¶¶ 168; 348(a); 370-72.  These allegations are sufficient.

Defendants' reliance (at 12) on decisions dismissing unjust-enrichment claims that "lump[] all Defendants together" is therefore misplaced, because Plaintiff's allegations identify which Defendants received the unjust benefit, the actual amount of the unjust benefit, and how the benefit was improper and came at Plaintiff's expense.[35]

## CONCLUSION

Defendants' motion to dismiss Plaintiff's state-law claims for fraud and unjust enrichment should be denied.[36]

---

*Footnote continued from previous page*

unjustly benefited Defendants Cassano, Frost, and Forster with large bonuses despite the losses suffered by AIG shareholders during the same time period).

[35] *Cf., e.g.*, *Ohlendorf v. Am. Brokers Conduit*, No. CIV. S-11-293 LKK/EFB, 2012 WL 718682, at *10 (E.D. Cal. Mar. 5, 2012); *see also Bonner v. Redwood Mortg. Co.*, No. C 10-00479 WHA, 2010 WL 1267069, at *6-7 (N.D. Cal. Mar. 29, 2010) (dismissing unjust-enrichment claim because plaintiff made "*zero* factual allegations regarding the payments individual defendants received") (emphasis in original).  *Prime Mover Capital Partners v. Elixir Gaming Technologies, Inc.*, 898 F. Supp. 2d 673 (S.D.N.Y. 2012),  is also inapposite, because in that case the only allegations of benefit to defendant related to the selling of securities at artificially inflated prices (*id.* at 697), whereas the Complaint here includes particularized allegations concerning the amount of bonuses and compensation the Individual Defendants received as a direct result of taking on additional risk, at investors' expense.

[36] Should the Court dismiss Plaintiff's unjust-enrichment claim, it should also grant Plaintiff leave to amend.  *See* Fed. R. Civ. P. 15(a).

Dated:  March 6, 2015

Respectfully submitted,

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**

By:  _/s/ Michael J. Miarmi_
    Michael J. Miarmi

Steven E. Fineman
Daniel P. Chiplock
Michael J. Miarmi
Nicholas Diamand
Douglas I. Cuthbertson
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel: (212) 355-9500
Fax: (212) 355-9592
sfineman@lchb.com
dchiplock@lchb.com
mmiarmi@lchb.com
ndiamand@lchb.com
dcuthbertson@lchb.com

Richard M. Heimann
Joy A. Kruse
Bruce W. Leppla
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel: (415) 956-1000
Fax: (415) 956-1008
rheimann@lchb.com
jakruse@lchb.com
bleppla@lchb.com

*Attorneys for Plaintiff The Regents of the University of California*